I'm going to discuss this a little bit more about the counsel for the appellant in this case, which is Mr. Zapien. The issue, the primary issue in this case is whether there's a violation of Mr. Zapien's foreign warrants. Mr. Zapien, on the evening day, and he's in the afternoon hours, and he's been very encouraging, assertive, open about Mr. Zapien's involvement. In the case of the counsel, in the case of state responsibility in the city, the department asked questions about the case on the day they had to ask the questions regarding conceding the environmental information for a company in the U.S. in World War II. More than I've been told, Mr. Quincy, I didn't have the answer to these questions. They didn't ask me these questions, and it's unclear whether or not during asking these questions, he said that he wanted to make a statement regarding what he was doing that for. And in the case of SIPA, we've already asked our counsel to come out and talk to us, but I can't give you an answer to your question. We're going to hear from Andrew Rice, and then he's going to hear from Andrew Rice. We're going to see if he can create a statement, and a statement to explain why he had to be involved with this. Is there a possible origin? Was he able to accept these rules? Why? Can I observe the individual having those? I'm sorry, Andrew Rice. It is possible, but the circumstances here are a bit different. Okay. First of all, Mr. Quincy, I'm wondering as to what you thought about Charles' agency, who he was, and the photographs of him when they were preparing to take down this man that made a lot of conspiracy. Did you provide photographs to other agents that you were able to take to the search warrant so that you had a lot of biographical information? What do you consider the size of an offshore human subsidiary? Or are there circumstances where information has already emerged that are true? I think it's a complicated question. I think it's probably hard to work with evidence that isn't both focused on science and the past to use the biographical information in such a way to move somewhere in the world to continue the interrogation, which depends on what's been here. There's not an interrogation. That is, you're changing areas, you're going to biographical information, and if we were to change the rule, what you suggest, you're saying that you're making an exception, which would be using this biographical information. How much more do you know about this? And I don't think there's really a basis for making any kind of an exception. Well, I'm not asking the court to make an exception, but there is a constitution that in between the long-term result and the original source of the evidence and the means it used, and I was speaking to the court, that the means used to get that information must fall to the indication of a constitutional underground. There's not an understanding that you're changing the information for your argument. That doesn't matter. It's just that you have a problem that makes you think that you're confused. That's what you're saying, that they didn't need to continue to narrow down the information already. Well, I'm trying to justify that they're asking the question in order to cover the score. And then you're saying that you're not going to change the score. That's not what you're saying. You're saying, well, can you try to just not change? Are you really narrowing it down? Can you try to change the story? Or do you think you're doing this for the score? I think you're responding fairly narrowly. Because the information was certainly there, and the evidence testimony that they filled out was still too far. It was unpredictable, because the information was still there. Well, I don't think that's what they filled out. I don't have the question. So, the statements that went out, I'm just not sure how they filled them out there. But is it possible that they were intentionally allowed to share some of the documents or letters here? Well, it is possible. But we submitted, given that they only talked to me for about 20 to 25 minutes, that they were being asserted by the agent. The consideration that the agent, first of all, was not supportive of the evidence, and secondly, was used as an excuse to keep him from talking. I know that the agent denied that there was grace, but there was absolutely no cessation at all in questioning what it is. It's absurd. I mean, even if they knew that there was some kind of obligation to be authorized by the agency to do something like that, I'm sure that's hard to argue. I mean, the agent was being used as a provocateur. I mean, they didn't see any information. It's sort of a failure of the agency to do something like that. I think they were pushing forward. But the stories seem very clear. I don't see the defendant in those photographic sites and photographic cases questioning what seems to be the case. Well, I think that's exactly what the problem is. That's pointed out in the, excuse me, in the, I'm sorry, in the Smith version of the process. You can have agents that choose, you can have agents that choose to be ambiguous about what the defendant is saying in order to continue questioning in that case. No, I think it's a really good question. I think everyone agrees that this is one of those cases where he just didn't go so wide with it. So he says, you know, he's just totally stateless and he wants to consult with the officer on this case. And then he says, I'm not going to ask you that. I don't want to ask you that. I'm going to ask you some other questions. So if you had listed, you know, what seems to be the case in the circuit and some of these different court cases, don't you think there are some things where you don't want to change the law? What do you think there are even to change the law? Well, what we seem to see, Your Honor, is that there's an existence of analogies to the Smith version of the law. And that through questions involving existence, which in this case is one of the cases where the suspect is accused of scaring his parents, that there are analogies to the Smith version of the law. That there are analogies to the Smith version of the law. Of course, there's a lot of controversy No, but coercion can be, as you say, very subtle and even, as you say, in the Smith version of the case, that the subject can be involved in. It's certainly important to keep in mind that the subject is a scientist. If they're talking about a scam, obviously it would be very easy to say, well, you know, you're a feminist and you're concerned about your children and you're concerned about your wife. Who is your wife? I mean, surely, that's what controversy is about. We're very often talking about conspiracy. And so I don't think it's a conspiracy to go onto these questions. I think there are some, I don't know how far you can go. But of course, there are a fair amount of specific cases in the case of the Smith version. And of course, you know, the coercion result in the Smith version is a pretty big story that it all depends on the people involved. I don't know that the entirety of the case would argue for some confusion. But I've heard many major statesmen talking to each other about these issues and folks being very supportive of their views. If I were to say the principle that I would apply to the rule of the burning hat, which is that you're too aware of yourself and possibly think you're aware of the question, what would be the principle that I would use in my short case to work on the general rule? I think it's very clear that once a person invokes the rule of the burning hat, it's a position to use. The question is, is it absolutely an absolute principle? Well, no. I don't think so, Your Honor. If you couldn't stop them asking those questions, they couldn't have come up with a better principle. The last question is not the best one. The first question is not there very well. And this is going to be a very important point. What they did in this example is install the pun interpreter and explain the question. It has to be very, very few questions. What they did is they ordered the person and then they started asking the question so that they could talk. And we don't have them. We might not even have them. We don't have them. We don't have them. We don't have them. We have someone who's using a pen, but we don't have a print. Yeah. Good morning, you're on  Canadians mail. Good morning, this is she. It is to your question. The Citizen Talent Channel and the Consultations that we have here. Not all direct questions come to the interrogation. And it is necessary that once the interrogation for each case has occurred, that the interviewee is called and interrogated. That's not what the process is for. Those of you who are folks that have seen any case in which there was interrogation and there was the invocation and then I got the question started immediately. I don't say there's going to be an answer right now. The process starts with asking the question. So, who did you interrogate? And I think the answer to another question, there is no interrogation at the time of the interrogation that you said in question. In terms of calling and answering, I think you're right to do it the way that the question was created. Created is that you look at each action. So, if you need to refer in court beforehand after asking the question, then of course, if you don't need to do that, just try to ask the question. If you want to ask it like that, I think there's definitely a need to talk to his or his attorney to talk to the attorney to get the answer to the question. The question is, what was the process of interrogation? The process, which is questions about the person's real intentions. He knows it's in his car. And the points are in the car. Is it that the person initiates conversation? Is it that the interviewer asks a lot of questions of the interviewee? If the interviewee seems relieved, that's a possibility for a focus on the crime. If the interviewee seems to be in need of a bit of time and a different form of teaching, then the background questions were asked. I don't think as the interviewee, I'm concerned in terms of why the attorney did it. When it comes to pushing questions, no interrogation. When we look at the Great Virginia Clause, it talks about how a person who works for a law firm called a 981099 is placed under arrest if one were to murder them. He's immediately told his right to counsel and his right to defense. How do you continue to question him in order to obtain biographical information? I think that's what we have here in the sense that it's very clear that it's agrees with the officer, but it's not a moral law. So at least then I'm saying, you know what? Okay, we're not going to ask about the case. We're not going to ask about the evidence. We're now going to turn to court. And so, except for the president and the district, we're also administering things that are binding to that. What occurred here, the interviewee was terminated. That's an ER-92 also. Questioning concerning your part of the trafficking scene. An interviewee was terminated in an ER-84. And questioning concerning your part of the trafficking scene. Is it true that you were in some place where you were able to defend after your search was first identified? Are some of these questions that you debated in all of your speeches, kind of disproportionate? And the answer to your first five questions. Well, first of all, the purpose of this hearing is not to give you a seasonal insight. It's to give you a question, start with you, and then you can comment based on what you heard, what you thought about trafficking. It's not like this is a specific finding that there's not any need or there's any right to something that I can show you as far as this is a question for an interviewee, for example. It's an interviewee's right to a question about trafficking based on the context. Well, I think that the officer said, okay, we're not going to ask any more questions about the case or the evidence. And it's a very important factor as well because it's not just the training device for ethical questions, there's often non-interrogations for cases. But you get a pretty strong background that's sort of where you want to go below the house. Okay, you know, we're not going to talk about this. We're just going to do this. So is there any reason why officers can't wait to move? There's nothing in the record that's accused of maybe not legally required and the reason is because not all questions constitute interrogations as is ordinarily in law. I think I understand since it wasn't in the court that the interview was terminated, that was just kind of the honoring of the right to counsel. And the officers are like, okay, we're not going to ask you about that now. We're just going to try to form a list of things that are not interrogations. Miranda's on the list. Self-silence. That suggests that in fact there must be this break or some kind of break. I respect that, but as you know, the reason it's becoming a keynote is because not all of the right questions constitute interrogations. At this point, we've seen that the interrogations in some unique question codes would be broader than that required in certain policy environments. So I do believe that foster works. Number eight, reach out to Miranda so that they can try to consistently send a message to Miranda and, you know, we don't have time to cover all the cases, but if there are questions that you already have in your head, reach out to social media so that more questions can be asked. If the interrogation is what you're waiting for, there's a lot of information required to do that. I was also concerned about the process of working. This is the first Friday night that we use communication. She's not on the first person until three days later. This is a great possibility because it's easy to go through the session. She tries to extend the interview under some authoritarian means. There's a question that she is asking about what she should be doing. We don't have to make as many decisions as we need to. It's part of the working process. Well, what I can tell you is that we have scientists all over the world doing interviews on traditional versus change. His questions focus on the way the interrogation is prepared. It's a really important question for all our human folks. The question also was about the perception of what is happening around them. What was the notion of facing opposing perception? She asked questions about that. I think the question is this. I think if you don't have evidence of coercion, that's that. You are 93. There's no evidence of coercion. In order for this court to find that this was done for social issues, it would be completely contrary to 93. I  if you don't have evidence       contrary to 93. I think if you don't have evidence of coercion, it would be completely contrary to            93. I           completely contrary to 93. I think if you don't have evidence of coercion, it would be completely contrary            would be completely contrary to 93. I think if you don't have evidence of coercion, it would be completely
judges: McKeown, Friedland, Boulware